UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PALMER PARK SQUARE, LLC,

    Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.
                                      /

Case No. 16-11536

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [8]**

On or around February 2, 2012, Plaintiff's vacant apartment complex was nearly gutted, resulting in over $1 million in direct physical loss. Plaintiff submitted a claim with its insurer–Defendant Scottsdale Insurance–and, after a protracted review and appraisal process, was reimbursed up to the policy limit.  Over four years after the loss was first reported, Plaintiff filed this action seeking penalty interest under Michigan law.  The success of Plaintiff's claim boils down to two issues: first, whether penalty interest is considered a claim "on the policy" and, if so, whether Michigan's tolling provision applies to surplus line insurers like Defendant.

Currently before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons stated more thoroughly below, the Court GRANTS Defendant's motion. [8]

**I.    BACKGROUND**

The parties principally agree on the material facts giving rise to this dispute. Plaintiff Palmer Park Square ("Palmer") was the owner of a vacant apartment complex at 843

Whitmore Street in Detroit, Michigan (the "Property").  At all times relevant to this action, the Property was insured under a policy (the "Policy") issued by Defendant Scottsdale Insurance ("Scottsdale"). (Def.'s Mot. Ex. B, Commercial Policy).  Between February 2-3, 2012, the Property was broken into and vandalized. (*Id.* Ex. C, Police Report). Approximately 18 months later, Palmer submitted a property loss notice to Scottsdale.  (*Id.* Ex. D, Property Loss Notice). The following month, on November 18, 2013, Scottsdale acknowledged its receipt of the notice and wrote to Palmer highlighting a number of coverage restrictions under the Policy. (*Id.* Ex. F, Nov. 18, 2013 Letter).  Significantly, Scottsdale noted that, under section D of the "commercial property conditions", Palmer was prohibited from instituting a legal action unless "there has been full compliance with all of the terms of [the Policy] . . . and [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." (*Id.* at 5).

After some amount of back and forth, Palmer invoked its right to an appraisal for a damages assessment.  At the conclusion of that process, the parties' representatives agreed that the total "building ACV loss" was $1,642,796.  (Def.'s Mot. Ex. I, Appraisal Award).  In the end, Scottsdale conceded that Palmer was entitled to the Policy limit, and issued three separate payments totaling $1 million.  (*Id.* at Ex. K, July 14, 2015 Letter).

Shortly after receiving Scottsdale's final payment, Palmer raised–seemingly for the first time–the concept of "penalty interest." (*Id.*).  Specifically, Palmer demanded $125,754 in penalty interest stemming from Scottsdale's purported failure to satisfy the claim in a timely manner. *See Id.* ("[s]tatutory interest is to be paid by an insurer at the time of issuing any late payment."). Perhaps not surprisingly, Scottsdale denied Palmer's request,

2

maintaining that "all payments were timely made once the amounts owed were determined, [and thus] no penalty interest is due . . . ." (Plf.'s Resp. Ex. 3, Oct. 26, 2015 Letter).

In March 2016, Palmer initiated this litigation. According to the complaint, because Scottsdale failed to remit payment within 60 days of receiving the notice of loss, Palmer is entitled to 12% interest. The success of this claim hinges on the applicable limitations period, which Scottsdale asserts has long passed.

## II. LEGAL STANDARD

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir.2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## III. ANALYSIS

At its core, Scottsdale's motion raises two distinct issues. First, the Court must consider whether penalty interest under Mich. Comp. Laws § 500.2006 is considered a "claim on the policy" or an entirely separate cause of action. The answer to this question determines the applicable statute of limitations, and thus the viability of Palmer's claim. Assuming the Policy does control, and Palmer's claim is presumptively time-barred, the Court must then determine whether it is saved by Michigan's mandatory tolling provision. *See* Mich. Comp. Laws § 500.2833(1).

### A. Limitations Period

Under the Michigan Insurance Code, "if benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, . . . ." Mich. Comp. Laws § 500.2006(4). The application of the penalty provision is fairly mechanical; absent a few limited exceptions, "a first-party insured is entitled to interest if benefits are not paid within 60 days after satisfactory proof of loss is provided", regardless of whether the claim is "reasonably in dispute." *Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 741 N.W.2d 549, 557 (Mich. Ct. App. 2007). Here, although the question of Scottsdale's timeliness is not before the Court, there is seemingly no dispute that Palmer's claim was not paid within the 60-day window under the statute. Nevertheless, the parties' dispute hinges on the applicable limitations period. According to Scottsdale, the Policy is clear: "[n]o one may bring a legal action . . . unless [t]here has been full compliance with all of the terms of the Coverage Part; and [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." (Def.'s Mot. Ex. B, Policy No. CPS1462253). While

there is no question that this action was filed more than two years after the Property was vandalized, Palmer argues that a claim for penalty interest is "not a cause of action on the Policy itself", but rather a separate cause of action governed under the "catch-all six-year period of limitation set forth in MCL § 600.5813."  (Plf.'s Resp. Br. 9-10).

But Palmer has failed to identify, and the Court has been unable to locate, any authority in support of the proposition that a claim for penalty interest is sufficiently divorced from the underlying policy to constitute an independent cause of action.  And for good reason; the Michigan Court of Appeals "has held several times that there is no private cause of action for damages under MCL 500.2006, although a private person may recover penalty interest for a violation of [the] statute."  *Hastings Mut. Ins. Co. v. Mosher Dolan Cataldo & Kelly, Inc.*, No. 296791, 2013 WL 1149790, at *18 (Mich. Ct. App. Feb. 14, 2013) (vacated on other grounds).  In other words, penalty interest "is properly considered a penalty against the recalcitrant insurer rather than compensation for the plaintiff."  *Id.*

In *Hearns v. Rickenbacker*, 400 N.W.2d 90 (Mich. 1987) the Michigan Supreme Court explained the distinction between an action "arising out of the contractual relationship", and one "on the policy."  There, the plaintiff-insured asserted two claims of fraud and negligence stemming from "the handling of his premiums and *policy purchase* generally, at a time *prior* to the fire loss."  *Id.* at 93 (emphasis added).  Because the plaintiff was "not alleging negligence [or fraud] associated with nonpayment of his claim . . . .", but rather "the breach of duties existing independent of and apart from the contractual undertaking", his claims were not "on the policy".  *Id.* at 93-94.

Penalty interest, by contrast, naturally arises only *after* a loss has been reported and is directly related to the nonpayment of a claim.  *See  Martin v. Liberty Mutual Fire Ins. Co.,*

5

293 N.W.2d 168, 171 (Wisc. Sup. Ct. 1980) ("An action to collect for a loss is, by its very nature, an action on the policy, since it is the policy which obligates the insurer to pay the loss.") Indeed, § 500.2006 "allows an insured to recover twelve percent interest from its insurer where no complaint has been filed to force payment." *Yaldo v. N. Pointe Ins. Co.*, 578 N.W.2d 274, 277 (Mich. 1998). For that reason, "[t]here is no implied private cause of action in tort for violation of M.C.L. § 500.2006." *Young v. Michigan Mut. Ins. Co.*, 362 N.W.2d 844, 847 (Mich. Ct. App. 1984) ("Plaintiff contends that M.C.L. § 500.2006 . . . creates a cause of action in tort which can be maintained by a private party. We disagree.") In this way, Palmer's argument fails for at least two reasons: (1) penalty interest does not satisfy the "personal action" requirement under § 600.5813, and (2) penalty interest is inseparable from a claim on the policy. For that reason, the Court finds that Palmer's claim for penalty interest is "on the Policy" and therefore subject to a two-year period of limitations.

### B. Tolling[1]

According to Palmer, in the end, the applicable limitations period is effectively a red herring because "the mandatory tolling required by MCL 500.2833(1)(q) must be impressed onto the policy and precludes enforcement of a limitations period absent a formal denial of liability." (Plf.'s Resp. 11). While it is true that the Michigan Insurance Code requires every *standard* policy to include a tolling provision, "surplus line insurance contract[s] . . . [are] not subject to the general provisions of the Insurance Code." *Gulf Underwriters Ins. Co. v. McClain Indus., Inc.*, 765 N.W.2d 16 (Mich. 2009) (Young, J.) (denying leave to appeal).

---

[1] Both parties were permitted to file supplemental briefs on this issue. The Court carefully considered both.

Indeed, Mich. Comp. Laws § 500.1904(2) is clear that "forms used by unauthorized insurers pursuant to this chapter shall not be subject to this code, except that a policy shall not contain language which misrepresents the true nature of the policy . . . ." No matter, Scottsdales argues, because "the second clause of § 500.1904(2), addressing the 'language' of the policy, confirms that this provision relates only to a policy 'Form,' not the policy's substance.'" (Plf. Supp. Br. 2). The Court finds Scottsdale's position untenable for a few reasons.

First, as a matter of statutory construction, the second clause of § 1904(2) does not support the narrow interpretation Scottsdale advances- i.e. that the exemption only applies to the "arduous 'form' approval procedure'". (Plf.'s Br. 3). If anything, the opposite is true; by specifying that a policy "shall not contain *language* which misrepresents the [policy]", the legislature made clear that the exemption *is* substantive. In other words, surplus line insurers are free to include policy "language" that is otherwise inconsistent with the "code" so long as it does not "misrepresent the true nature of the policy." And the Michigan Court of Appeals has ratified this construction. Indeed, as the court explained in a related case:

> Cook argues that MCL 500.3006 precludes Gulf Underwriters from denying coverage based on the McClain defendants' insolvency because the [Michigan Insurance Code] requires insurers to include a [warning] provision in the policy . . . . Yet MCL 500.3006 *is inapplicable to this case* because Gulf Underwriters is a 'surplus lines carrier,' i.e., an insurer that is not authorized by the state insurance commissioner to transact insurance in the state of Michigan. MCL 500.108; MCL 500.1903(1)(d). Therefore, Gulf Underwriters was not subject to the requirements of MCL 500.3006. MCL 500.1904(2)

*Gulf Underwriters Ins. Co. v. McClain Indus., Inc.*, No. 273768, 2008 WL 3021134, at *2 (Mich. Ct. App. Aug. 5, 2008) (emphasis added).

Similarly, in *Royal Park Group, LLC v. Prime Ins. Syndicate, Inc*, 706 N.W. 426 (Mich. Ct. App. 2005), the court held that the co-insurance clause in the defendant's policy did not violate the Uniform Trade Practices Act because, as a surplus lines insurer, the plaintiff's "rates and forms [were] not subject to the . . . Act." *Id.* at 724. The ability to offer individualized "insurance coverage enables such insurers, through the use of non-standard forms, to tailor their policies to the exact needs of the insured, and also to perform a valuable service in writing deductibles. " *Id.* at 725. And because surplus line carriers are only permitted to insure those risks that a traditional authorized carrier will not, they serve a critical function in the marketplace. *See* Mich. Comp. Laws § 500.1910(1). But as the court aptly explained, and is particularly relevant here, this symbiotic relationship presents unique risks on both sides of the transaction:

> Royal was not able to obtain coverage from an authorized insurer, presumably because of the high degree of risk involved in insuring the buildings. Indeed, to obtain any insurance coverage, Royal was required to go to an agent or broker specially licensed to transact in surplus lines insurance. MCL 500.1905. Certainly, Royal must have be been aware that Prime was willing to insure against higher risks, and that Prime's insurance policy would be tailored to enable it to take those higher risks.

*Id.* at 726-27.

The risks and legal implications were no different here. Scottsdale agreed to insure a vacant apartment complex in the City of Detroit. As a surplus lines carrier authorized by the Michigan Department of Insurance and Financial Services (Def.'s Reply Ex. Q, Eligible Unauthorized Insurers List), Scottsdale was "not subject to the general provisions of the Insurance Code", *Gulf Underwriters Ins. Co.,* 765 N.W.2d at 16, and for good reason; the risk associated with insuring the Property was much higher than the traditional market was willing to bear. For that reason, Palmer "should have known to pay particular attention to

the policy because it was obtained through a surplus lines insurance carrier." *Royal Prop. Grp.*, 706 N.W.2d at 439.  Nevertheless, the limitations period under the Policy was clear, and Palmer would be hard-pressed to argue otherwise.  *See Id.* at 438 ("There is no reasonable dispute that had Royal read this portion of its policy, it would have understood the extent and effect of the [] clause.")  In the end, the real loser was Scottsdale.  By taking a chance on an otherwise uninsurable property, it was stuck with a loss of over $1 million, which it voluntarily paid. Without any basis upon which to toll Palmer's claim for penalty interest, the Court must, and does, GRANT Scottsdale's motion for summary judgment. [8].

## IV.   Conclusion

For the reasons thus stated, the Court hereby GRANTS Scottsdale's motion for summary judgment. [8].


SO ORDERED.

       S/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated:  January 19, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 19, 2017, by electronic and/or ordinary mail.

       S/Carol J. Bethel
       Case Manager